BOTER v. BOTER.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.

A decree of divorce to husband on the ground of extreme cruelty
is affirmed, where there are no children of the marriage, a recon-
ciliation had not been effected, parties are of different religious
faiths, son of defendant wife by former marriage which had
resulted in a divorce, had been a frequent cause of quarrels, and
there was testimony of physical violence by her, although
plaintiff was not entirely blameless.

2. SAME—COSTS.

No costs are allowed either party upon affirmance of decree for
plaintiff husband on wife's appeal.

Appeal from Ottawa; Verdier (Leonard D.), J.,
presiding. Submitted October 7, 1953. (Docket No.
23, Calendar No. 45,910.) Decided November 27,
1953.

Bill by Peter S. Boter against Mabel Boter for
divorce on ground of extreme cruelty. Decree for
plaintiff. Defendant appeals. Affirmed.

*Amberg, Law & Buchen,* for plaintiff.

*Schmidt, Smith & Howlett,* for defendant.

BUTZEL, J. Peter S. Boter, plaintiff, was granted
a decree of divorce from Mabel Boter, defendant, on

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Divorce and Separation §§ 53, 56, 57, 59.
[1] Religious differences as affecting right to divorce or separation.
28 ALR 1163, 44 ALR 726; 58 ALR 462; 25 ALR2d 928.

the ground of extreme cruelty. Although the judge believed that plaintiff was entitled to a divorce, he delayed the granting of the decree in the hope that after a cooling-off period the parties might become reconciled. A reconciliation was not effected because, as the judge stated "the differences that underlie their frequent clashes are too deep-seated."

The record indicates that most of the time both parties behaved as persons of intelligence and refinement. They both did some drinking and this, to a very minor extent, contributed to their difficulties. Defendant filed no cross bill nor did either party in any way show or claim at the hearing that the other was an habitual drinker. Liquor was not the basic cause of the difficulties.

The record indicates that defendant's conduct was so inexcusable and consisted of such acts of cruelty as to entitle plaintiff to a divorce. Defendant herself suggested to plaintiff several times that he obtain a divorce. The parties had a long courtship and engagement which was interrupted by plaintiff's absence in the military service during the war. They were of different religious faiths but plaintiff agreed to be married by a priest with the understanding that he would thereafter continue to maintain his membership in a church of another denomination. Defendant did not live up to her part of this understanding that there be no disputes due to the differences in religion. The testimony, however, shows that she referred to plaintiff's parents and their religion in most opprobrious terms. She did much nagging and was dissatisfied with the furnishings of the home although plaintiff was in this regard very liberal. He claims she made false charges in regard to his drinking, ridiculed him before his parents and constantly had long and violent arguments with him.

Very serious quarrels arose over defendant's 14-year old boy, a son by a former husband from whom she had been divorced. The child had behavioristic tendencies necessitating the intercession of the probate court or its juvenile agent. The facts are not set forth in the record which does, however, indicate that the boy was a serious problem. Plaintiff at one time agreed to adopt the boy and become his legal parent. He wrote to defendant's former husband, the father of the boy, and also prepared a petition for adoption. However, when he realized that the marriage relationship was uncertain and might come to an end, he refrained from adopting the boy. He did, however, spend considerable time and money consulting psychiatrists in an effort to solve the boy's problem.

The many quarrels that arose over the boy and other problems resulted in plaintiff leaving the home temporarily and staying at his parents or a hotel. This occurred at least a score of times. The physical attacks by defendant upon plaintiff might be looked upon as having been condoned by the frequent reconciliations but these attacks do evidence the severity and the extent of the arguments. One time defendant struck plaintiff over the eye with her engagement ring so that he was badly scratched. Plaintiff testified that on another occasion defendant tore off part of the protective garment he was wearing; another time she pressed a lighted cigarette against his ear.

Defendant was very frank and honest in her appraisal of the marital situation but still professed her love for plaintiff and sought a reconciliation. She stated that when she married the plaintiff she realized that there were "2 strikes against" the marriage because of the boy but thought that with plaintiff's cooperation this could be overcome. The final separation followed a dispute about the boy

who threatened to kill plaintiff if he did not stop abusing defendant. There was no abuse on plaintiff's part. Defendant sided with the boy. The boy has been sent away to school and defendant believes that his removal will end the difficulties theretofore existing.

The case differs from that of *Garb* v. *Garb,* 328 Mich 305, on which defendant largely relies. In that case we refused a divorce but the facts were significantly different. In the bill and cross-bill in the *Garb Case* each party charged the other with cruelty and proved it in a measure. One of the children involved was physically and mentally defective. His condition caused much quarreling between the parents. The boy was finally sent away to an institution where he was to remain for a considerable period of time. In the instant case defendant's boy will come home for vacations and may continue to be a source of unhappiness to both plaintiff and defendant. In the *Garb Case* we held that in view of the record, the home should not be broken up and thereby deprive the young children of the joint help and care of the parents. In the instant case, there were no children except defendant's son.

It is true, as defendant claims, that neither party was entirely blameless. But we have held that where the acts of cruelty on the part of one party are so far greater than those of the other, the latter is entitled to a divorce. We stated in *Gillett* v. *Gillett,* 269 Mich 364:

"We have frequently refused to grant a divorce where the parties are both at fault. * * * The instant case, however, is not free from doubt. There are no children of the marriage, and the relationship of the parties, as shown by the record, has become so unbearable that we are constrained to concur in the decision reached by the trial court to grant the divorce."

See *Trombley* v. *Trombley,* 313 Mich 80; *Gaw* v. *Gaw,* 327 Mich 120; *Stuart* v. *Stuart,* 311 Mich 30.

After a careful review of the record, we conclude that the trial judge properly granted a decree in favor of plaintiff.  Decree affirmed, without costs.

ADAMS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

DETHMERS, C. J., did not sit.