LABADIE *v.* LABADIE.

1. DIVORCE—DISMISSAL OF CROSS BILL—CONSENT.
   Defendant wife's motion to dismiss her cross bill for divorce was properly denied, where no consent to such dismissal was filed (Court Rule No 38, § 1 [1945]).

2. SAME—EXTREME CRUELTY—EVIDENCE.
   Record in suit for divorce *held*, to support decree for defendant wife on her cross bill on ground of extreme cruelty, where the marriage was childless and the trial court had the advantage of seeing and hearing the witnesses, notwithstanding it may be that wife may have been somewhat at fault.

3. SAME—DIVISION OF PROPERTY—MODIFICATION OF DECREE.
   Division of property valued at $38,540, whereby husband received property worth $9,150 more than defendant wife to whom divorce was awarded on cross bill, is modified to award her $2,500 more to be paid within a year, where 1938 marriage has been childless and she is 70 years of age, left without a home and no means of producing an income.

Appeal from Van Buren; Mosier (Carl D.), J. Submitted October 5, 1956. (Docket No. 47, Calendar No. 46,940.) Decided February 28, 1957.

Bill by Larue Labadie against Anna Labadie for divorce, with cross bill by defendant. Subsequent to opinion granting decree on cross bill, defendant attempted to withdraw complaint. Decree entered. Defendant appeals, attacking decree and property settlement. Modified and affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Divorce and Separation § 347.
[2] 17 Am Jur, Divorce and Separation § 48 *et seq.*
[3] 17 Am Jur, Divorce and Separation § 643 *et seq.*

*DavidAnderson, Jr.,* for plaintiff.

*Williams & Williams (Lewis R. Williams,* of counsel), for defendant.

SHARPE, J.  Plaintiff, Larue Labadie, and defendant, Anna Labadie, were married October 27, 1938. Both of the parties had been married before—plaintiff twice and defendant once.  No children were born of this marriage.  Plaintiff filed his bill of complaint, based on extreme cruelty, praying for a divorce, on August 5, 1955.  Defendant filed a cross bill praying for a divorce, on August 30, 1955.  At the time of the hearing plaintiff was 72 years old and defendant was 70 years old.

At the time of the marriage plaintiff owned 32 acres of land west of Paw Paw, Michigan, upon which were 2 summer cottages.  Plaintiff also carried on some farming operations on this land, which consisted largely of a berry crop.  After these parties' marriage the property owned by plaintiff was put into joint title with defendant and the parties built and furnished 3 more cottages on the farm land.

Prior to her marriage defendant lived in Chicago where she owned her own home.  Prior to her marriage defendant also inherited a house, some money, household furniture, clothing, silverware, and bonds from a sister.  After her marriage defendant expended approximately $6,000 of her own money on the farm and furnished the cabins and farm home with furniture she had inherited and owned prior to her marriage.

During all of the parties' married life defendant managed the home, the summer cottage business, assisted with the berry crop, kept the books, paid the help, kept a joint bank account in the parties' names, took care of the laundry, and did all other manual chores in connection with the maintenance of the

cottages. It was plaintiff's responsibility to keep the cottages in repair and take care of the planting, cultivating and harvesting of the berry crop.

Plaintiff testified that before his marriage he made about $40 or $50 a year from his cottages; that after he married defendant she took over the cottage business and built the business up to where they made approximately $2,000 a year on the cottages. He also testified that defendant swore at him; that defendant threatened him, and on one occasion hit him with a bone; that defendant threatened to "cut my guts out" with a butcher knife; that defendant drank beer; that he was a sick man, a nervous wreck, and lived in constant fear of his wife. He testified:

"The income has been from raspberries, nursery stock and the cottages. She fixed up the 2 cottages, a third was built about 1939 and 2 more cottages about 1940 or 1941. The cottages have produced a good income. She told me the cottages would bring in about $2,000 a year. I turned the money in to her and she kept the books. She handled all the other money and kept the books. Once in awhile I took some money. I never had no spending money. I never had anything to do with papers; she took care of that. I was told that I was dumb and a damn fool and I didn't know anything, that I was crazy and she was going to have me put in the insane asylum. I think the insane asylum would have been a lot better than that. This is the third divorce suit I have started against her.    *    *    *

"In the spring we got in an argument in the bedroom and I pushed her over the bed. She hit me a long time ago. A fellow in Florida saw her hit me. I come in the house and I come in to fix the door, and I always have rubbers when it is wet, and I took them off outside, and I come in there by the kitchen door to fix the door, and she got onto me about my feet being dirty and she said they were

still dirty, she hauled off and pealed me, and I hauled off and I pealed her a humdinger and she sit down real quick, and she hasn't struck me again until this trouble started. She threatened, but I always said to her, 'Remember the last time you hit me; the next time's going to be worse.'"

Defendant testified that plaintiff struck her many times; that he cursed and swore at her; that plaintiff filed 2 bills for divorce against her in which he made such accusations that she was ashamed to appear in society or church circles. She also testified:

"I never did strike Mr. Labadie. His statement that I threw a bone at him is not true. I never made any statement that I would cut his guts out with a knife. I never threatened to hit him with a glass bowl. He has struck me several times. * * *

"He called me many names. A German old bitch, a drunkard. We have had quarrels for many years. About 2 years ago I went to my bedroom to get dressed and go away and he came in and closed the door and threw me on the bed so hard that the bed broke down.

"While we lived together, I provided the money for living, food and clothing. The living expenses were paid out of the joint checking account. I paid the farm bills by check. The berry pickers were paid by cash and I paid them."

The trial court determined that plaintiff's bill of complaint should be dismissed and held that defendant established her right to a decree of divorce under her cross bill. In a memorandum the trial court stated:

"Concerning the joint title of the real estate the plaintiff testified, 'She said she would put her money in and we would make the property joint.' The defendant's version of it was that if she would marry him 'I would make joint deeds.' It appears, without much contradiction or argument, that the mak-

ing of the title to his lands into joint deeds was something that was considered by the parties before they were married, and such was accomplished immediately after the marriage. The appearance of the defendant on the property and in the home seems to have created a more business-like atmosphere, for the parties have made a good living and have accumulated something over and above their original capital investments. The defendant does not claim to know exactly how much property or money she brought to the marriage, but certainly nothing less than $6,000. In addition she had some furniture, and the plaintiff had none. He said that his former wife had taken his furniture. The money that she had was used first to pay for their honeymoon trip to Florida; to build the 3 cottages and furnish them with suitable furniture and equipment. The renting of cottages and the renting of boats brought in a considerable income, and it must be said that the larger portion of the work and energy that brought this income to the marriage was furnished by the defendant. * * *

"It is my conclusion that the defendant has established her right to a decree of divorce, and an absolute decree of divorce may be prepared based on defendant's cross bill."

Subsequent to the trial court's opinion the defendant decided that she did not want a divorce and filed objections to the decree and asked the court to dismiss the proceedings. The decree was entered and from this decree defendant appeals.

Michigan Court Rule No 38, § 1 (1945), reads:

"The plaintiff may at any time, before answer filed, and on the payment of costs, discontinue his suit by notice of discontinuance filed in the cause and giving notice thereof to the defendant or his attorney. Thereafter he may discontinue, on the same terms, only (1) upon filing a stipulation to that effect signed by the defendant, or his attorney, or (2) on the order of the court or judge made on

special motion in which the grounds for such discontinuance shall be set forth and which shall be supported by affidavit. After a recoupment, set-off or cross bill has been pleaded by a defendant no discontinuance against such defendant may be had except by consent."

Under the above rule it would have been error for the trial court to permit defendant to withdraw her cross bill of complaint at the time she requested it or refuse to enter a decree in this case. See *Goodspeed* v. *Goodspeed,* 300 Mich 371; and *Shields* v. *Shields,* 319 Mich 316.

We are in accord with the opinion of the trial court that the record in this case indicates that plaintiff's conduct consisted of such acts of cruelty as to entitle defendant to a divorce. The trial court had the advantage of seeing and hearing the witnesses and we cannot say that had we seen and heard the witnesses testify we would have found differently than did the trial court. In *Boter* v. *Boter,* 338 Mich 187, 190, this Court said:

"It is true, as defendant claims, that neither party was entirely blameless. But we have held that where the acts of cruelty on the part of one party are so far greater than those of the other, the latter is entitled to a divorce. We stated in *Gillett* v. *Gillett,* 269 Mich 364, 368:

" 'We have frequently refused to grant a divorce where the parties are both at fault. * *. * The instant case, however, is not free from doubt. There are no children of the marriage, and the relationship of the parties, as shown by the record, has become so unbearable that we are constrained to concur in the decision reached by the trial court to grant the divorce.' "

Defendant also urges that the property settlement made by the trial court was inequitable to her.

From the record in this case it appears that the value of all properties, bonds and moneys of the parties is about $38,540. The trial court divided this amount between the parties as follows: Plaintiff was awarded 22 acres of land worth $3,000; 10 acres of land worth $15,000; equipment in cottages worth $325; farm equipment worth $645; boats worth $275; 5 cottages worth $5,800; a bank account worth $1,300; totaling $26,345. Out of this amount awarded to plaintiff he was required to pay to defendant $2,500 on or before 6 months from the date of the decree, leaving him property, buildings and equipment worth $23,845. Defendant was awarded bonds worth $11,500; household furnishings worth $695; $2,500 from plaintiff; a 1948 Kaiser automobile that was not appraised; totaling $14,695. Plaintiff received approximately $9,150 more than defendant.

Before the parties' marriage plaintiff had income of about $40 or $50 a year from 2 cottages. At the time of her marriage defendant claims to have had approximately $11,000 in cash, household goods and furnishings. Plaintiff admits that defendant had at least $6,000. During the parties' married life defendant financed the business and the affairs of the parties from her own money and diligently applied herself to the business and affairs of the parties, to the extent that 3 additional cottages were built on the premises and the income therefrom was built up from almost nothing to the sum of about $2,000 a year. It was mainly through defendant's efforts over a period of almost 18 years that a profitable cottage and berry business was built up. In our opinion without defendant's industry and money this business venture would have not been so successful. We think that the property settlement was inequitable to defendant. For defendant's industry and work in the management of the business of the

parties over a period of almost 18 years as plaintiff's wife defendant was awarded little more than she had at the time of her marriage. She is without a home and has no means of producing an income. For this reason the property settlement should be modified to give defendant an additional $2,500, such payment to be made to defendant within 1 year from this date.

The decree is modified and affirmed.

DETHMERS, C. J., and SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.

VOELKER, J., took no part in the decision of this case.