HELBER *v.* SCHAIBLE.

1. CONTRACTS—AUTOMOBILES—REPAIRS.

Where defendants sold an automobile to plaintiff, who re-
turned it several times to be put in running order, with-
out avail, in conformity with a warranty accompanying
the purchase, and finally sent it back to give defendants
a final opportunity to adjust it, when it was partly de-
stroyed by fire in the garage of the defendants; and where
the purchaser advised them that he would not pay for
repairs, no contract would be implied to pay for repairs
made on the machine to put it in order and repair the
damage; and plaintiff could recover possession of the car
in an action of replevin.

2. PRINCIPAL AND AGENT—SALES—EVIDENCE OF AUTHORITY.

Upon the statement of plaintiff's father, through whom he
had negotiated with defendants in purchasing the auto-
mobile, that the son would not pay for repair bills, the
son being present at the time and concurring or acquies-
cing in the warning, the authority of the father to make
the declaration sufficiently appeared to entitle the testi-
mony to be considered in evidence.

3. SAME.

Authority to negotiate for the purchase of the automobile
would carry with it the authority to see that the buyer
got what he contracted for.

Error to Washtenaw; Kinne, J. Submitted June 8,
1914. (Docket No. 34.) Decided December 19, 1914.

Replevin by James Helber against Theodore E.
Schaible and another for an automobile. Judgment
for plaintiff. Defendants bring error. Affirmed.

*Floyd E. Daggett,* for appellants.

*John P. Kirk* and *Martin J. Cavanaugh* (*V. E. Van
Amerigen,* of counsel), for appellee.

BIRD, J. In October, 1911, plaintiff purchased a Ford automobile of defendants, and paid $560 therefor, with a warranty that it was a "good car and would run all right." The car soon developed motor trouble, and plaintiff returned it several times to defendants at their garage in Ypsilanti, to have the defect corrected. After several attempts to adjust it, it still worked badly, and complaint was again made to defendants. Defendant Schaible then requested plaintiff to return the car to their garage and give him one more chance to adjust it, and promised if he could not do so he would give him a new Ford car, or refund his money. On this occasion the car was in defendants' garage for several days, and during the time a fire occurred in the garage and the car was damaged. Defendants at once advised plaintiff of the damage to his car, whereupon he went to Ypsilant and saw the defendants, and while there it was suggested by them that the repair expense would not be heavy to send it to the factory at Detroit to be repaired.

Plaintiff advised them that he would not pay for any repairs on the car; that he had bought a good car and had not yet got what he paid for. The car, however, was sent by the defendants with other damaged cars to the factory and repaired, and, when returned to Ypsilanti, plaintiff was notified that his car was in working order and that he could come and get it. When he went after it, he was informed that there was a repair bill against it for $203.85. Plaintiff refused to pay this amount and possession of it was denied him. He thereupon began this suit in replevin and recovered possession of it. The trial resulted in a judgment for plaintiff, and defendants assign error.

It was the contention of the defendants that the car was in their possession for the purpose only of making repairs, and that the fire which occurred in

their garage was due to no fault or neglect of their own; therefore the loss was plaintiff's loss, and not theirs, and that the repairs for putting the car in shape was a legal charge against the plaintiff.

On the other hand, the plaintiff contended that he bought the car with a warranty that it was a good car and would run all right; that the car was returned to the garage repeatedly, not for repairs, but to give the defendants an opportunity to make good their warranty; and that its final return was made under the promise of defendants to make good their warranty, and if they could not do so, they would furnish plaintiff with another car, or refund the money; and, further, that he advised the defendants after the fire that he would not pay for any repairs, and therefore was not liable for them. Under the conflicting claims of the parties, the trial court submitted the case to the jury, and, among other instructions, gave the following, which is assigned as error:

"Under the evidence in this case the plaintiff is not obliged to pay for any repairs to said machine, unless you find from the evidence that there was an agreement or understanding on the part of Mr. Helber to pay for same."

1. The principal assignment of error is based upon the refusal of the court to charge, as requested, that for the repairs made after the fire, in the absence of an express agreement, the law would imply a promise upon the part of plaintiff to pay what they were reasonably worth. The complaint is that the trial court not only refused to so charge, but did charge in substance that defendants could not recover for the repairs to the car unless they found that plaintiff had agreed to pay for them.

It is undoubtedly true that if plaintiff took his car to defendants' garage to be repaired, and no agreement was made as to compensation, the law would

imply a promise upon the part of plaintiff to pay what the repairs were reasonably worth. But that is not quite the situation presented by the testimony.

Even if it be conceded that the car was in the garage for repairs before the fire, after the fire it was optional with plaintiff whether or not he would have his car repaired, and, if defendants caused the car to be repaired at the factory in Detroit without any agreement upon plaintiff's part to pay for it, they cannot recover for it. Under such circumstances, the law would raise no implied promise on the part of plaintiff to pay for repairs which he had never ordered, and to the payment of which he had expressly objected before they were made. We are of the opinion that the trial court properly instructed the jury as to this phase of the case.

2. Eugene Helber, father of plaintiff, testified, over defendants' objection, that he informed defendants, when they suggested having the car repaired at the factory, that "they would pay no repair bill." Error is assigned on the admission of this testimony, on the ground that there was no testimony showing that the witness had any authority to speak for the plaintiff. The testimony shows that the father carried on the negotiations with defendants, which resulted in the purchase of the car, and that they consulted with him about the repairs and when the car was damaged by fire, the father, and not plaintiff, was notified by them. It further appears that, when the father advised the defendants that they would pay no repair bill, the plaintiff was present and gave his tacit assent to the statement of the father. Under these circumstances, we think the authority of the father to make the statement in behalf of the plaintiff might reasonably be implied. The authority to negotiate for the purchase of the car would carry with it the authority to see

that he got what he contracted for. 2 Cyc. p. 948; *Ferguson* v. *Hemingway*, 38 Mich. 159.

3. It appears that on the trial plaintiff objected to any recovery by the defendants for repairs because they had failed to file a certificate with the county clerk, in accordance with Act No. 101 of the Public Acts of 1907, relating to copartnerships. Inasmuch as this right was not denied to defendants by the trial court, we see no occasion to discuss it.

We find no error in the record, and the judgment will be affirmed.

BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred. MCALVAY, C. J., did not sit.