ST. CECELIA SOCIETY *v*. UNIVERSAL CAR & SERVICE CO.

1. APPEAL AND ERROR—EQUITY—PLEADING—AMENDMENT OF BILL IN SUPREME COURT.

Where plaintiff's bill to establish title to a strip of land adjoining its building, used as a driveway, alleged record title with possession, there being no allegation of title by adverse possession or by prescription, and the trial court ruled that while plaintiff's deeds did not embrace said strip, it was unnecessary to amend the bill, in view of the prayer for general relief, the bill should be treated on appeal as amended in this court to conform with the testimony, the whole question of the extent and nature of the use by plaintiff having been gone into and been considered by the court, without objection or claim of surprise.

2. EASEMENTS—ADVERSE POSSESSION—DISTINCTION.

The elements necessary to give rise to a prescriptive right are the same as those of title by adverse possession, with the exception that it does not have to be exclusive.

3. SAME—ADVERSE POSSESSION—ACQUIESCENCE.

Plaintiff's continuous use of a strip of land as a driveway,

when occasion required, for over 25 years, with the acquiescence of the adjoining owner, *held*, sufficient to establish in plaintiff a prescriptive right to drive over said land, although insufficient to establish title by adverse possession.

4. SAME—DEFINITION.

An easement is a privilege or advantage in land, without profit, existing distinct from the ownership of the soil.

5. SAME—OPEN, NOTORIOUS, CONTINUOUS USE NOTICE TO PURCHASER.

Where the use of the strip of land as a driveway by plaintiff was so open, notorious, and discoverable as to be notice to defendant when he purchased the adjoining property, he took his title subject to such easement to the same extent that his grantor was bound thereby.

6. APPEAL AND ERROR—RIGHTS OF APPELLEE.

Where plaintiff has not appealed, it can claim no greater rights than it was granted by the court below.

Appeal from superior court of Grand Rapids; Dunham (Major L.), J. Submitted January 21, 1921. (Docket No. 109.) Decided March 30, 1921.

Bill by the St. Cecelia Society against the Universal Car & Service Company and others to establish title in a driveway. From a decree for plaintiff, defendants appeal. Modified and affirmed.

*Knappen, Uhl & Bryant,* for plaintiff.

*Clapperton & Owen,* for defendants.

STONE, J. The bill of complaint herein was filed in the superior court of Grand Rapids, in chancery, to establish plaintiff's title to a strip of land 6.81 feet in width adjoining its club house on the north. The club house is located on the east side of Ransom avenue, between Fulton and Fountain streets, in the city of Grand Rapids. The plaintiff alleged in its bill that

it was seised of the property in dispute, being in block 30, Campau plat, and purchased and went into possession thereof on or about July 24, 1892, and had ever since been in possession; that defendants claimed certain rights in and to said strip of land, and prayed that defendants might be decreed to have no right, title, or interest in said land, and prayed for an injunction to restrain the defendants from building on, or in any way interfering with plaintiff's possession and use thereof. It may be said, as claimed by defendants' counsel, that the issue raised by the pleadings was that of record title with possession. There was no allegation on the part of plaintiff that it claimed title by adverse possession or by prescription. There was, however, in the bill, a prayer for general relief. At the conclusion of the testimony at the hearing, plaintiff made a motion to amend its bill of complaint by adding the claims of title by open, hostile, actual, visible, exclusive, notorious and adverse possession thereof, and title by prescription. A preliminary injunction was issued, and the hearing resulted in a decree for plaintiff, the court below finding that the plaintiff had acquired title to the strip of land in question by adverse possession; but did not have record title thereto, and denied plaintiff's motion for leave to amend its bill of complaint. It appeared in evidence that the original surveys and plattings of the lots between Fulton street and Fountain street, made about 1833, and recorded in the land office at Kalamazoo, comprised two plats, viz.: Block 1 of Bostwick & Company's addition, containing lots 1, 2, 3, and 4 north of Fulton street, Campau plat of block 30 joining Bostwick & Company's addition on the north, consisting of lots 1, 2, 3, and 4, and following that block 26, consisting of lots 1, 2, 3, 4, and 5, extending to Fountain street. There has existed from an early day confusion and uncertainty as to the surveys and the boundary line be-

tween Bostwick & Company's addition and Campau plat, and also as to the land covered by said lots of block 26 of Campau plat. Upon this record we are of the opinion that the court below did not err in holding that the deeds to the plaintiff "did not embrace the strip of land 6.81 feet in width north and south, adjoining the building of the plaintiff on the north," and we shall not review the evidence upon that subject.

2. It is the claim of the plaintiff that, if it should be held that its deeds did not give to it the strip of land in dispute, still that it has, ever since 1892, claimed title, by color of title by virtue of its deed, to said strip of land adjoining its building on the north, and has been in actual, continued, visible, distinct, notorious, exclusive and hostile possession thereof; has used the same, and has acquired title thereto by adverse possession, which adverse possession ripened into title in fee simple, at the latest, in the year 1909, before defendant Louis Barth purchased the adjoining property.

3. That independently of color of title, it immediately after the completion of its building in 1894 went into possession of a driveway adjoining its building on the north, which driveway was approximately 6.81 feet in width; that the plaintiff claimed title thereto, and had ever since been in hostile, visible, exclusive, notorious, actual, continual, distinct and adverse possession thereof, and was then seised thereof in fee simple.

4. That immediately after the construction of said building in 1894, plaintiff commenced driving over a strip of land adjoining said building on the north; that said strip of land was approximately 6.81 feet wide; and that the plaintiff claimed the right to drive over said strip, and had ever since continuously done so, and thereby had acquired by prescription the right to do so.

It seems proper at the threshold of the case to con-

sider the question of practice raised by the defendants. It is urged that plaintiff must recover, if at all, upon the case it has made in its bill, and that a court of equity cannot grant relief based upon a case, or issue, substantially different from that stated in the bill, and a number of cases are cited in support of the claim. It should be borne in mind that a motion was seasonably made to amend the bill in the particulars mentioned. It was denied, seemingly, upon the ground that such amendment was not deemed necessary by the trial court, in view of the prayer for general relief. The record shows that the testimony bearing upon the nature of the use of the disputed strip of land was taken without objection. The case seems to have been heard upon the merits, and the whole question of the extent and nature of the user by the plaintiff was gone into and was considered by the court, and no surprise seems to have been claimed upon the hearing.

In the case of *City Bank & Trust Co.* v. *Hurd*, 179 Mich. 454, at p. 464, Justice Steere, speaking for this court, said:

"Amendments as to matters germane to the case can be allowed at any time in chancery suits to conform with the proofs, protect the substantial, equitable rights of the parties, and secure the ends of justice—even in the appellate court. *Morrison* v. *Mayer*, 63 Mich. 238; *Babcock* v. *Twist*, 19 Mich. 516; *Seymour* v. *Long Dock Co.*, 17 N. J. Eq. 169. The amendment proposed by complainant was germane to the controversy and should have been allowed in order to reach equitable and complete results."

See, also, *Charlet* v. *Teakle*. 197 Mich. 426, 430.

Under such circumstances technical rules of pleading and practice should not be applied in the appellate court, where it appears that a case has been fully heard upon its merits in the court below. We are of opinion that, under the circumstances here disclosed,

the bill should be treated as amended in this court to conform with the testimony. This course would seem to be equitable under all the circumstances of the case, thereby avoiding future litigation.

Coming to the merits of the case, we have read this record very carefully, and it seems to us that it appears by a great preponderance of the evidence that immediately after the completion of the plaintiff's building in 1894 it commenced to use the strip of land in question as a driveway, and as an exit from the building, and that such use has been continuous as occasion required during all of the intervening years; that this right was claimed by the plaintiff and does not seem to have been questioned by the predecessors of the defendants until about the time of the filing of the bill of complaint in this case. The former owner of the premises upon the north, a Mr. Morgan, who sold to the defendant Louis Barth, on the 5th day of March, 1910, in his deposition, testified that he understood that the plaintiff had been driving over the property. He testified, among other things, as follows:

"I understood that they made claim to this, but I never inquired into their ownership, and in fact I, myself, claimed ownership to the six feet in question and did nothing to waive the right I had in this six feet."

It must be said that he was cognizant of the facts, and his testimony shows that he knew of the plaintiff's use of the land. Charles B. Kelsey, a witness for the defendants, testified that he had lived in Grand Rapids since 1881 and was familiar with the property. Upon his cross-examination he testified as follows:

"I am familiar with the St. Cecelia property, more or less. I have been familiar with it from the time the building was built and prior to that, even. My wife was a very active member of the society in the early days. I understood that the society claimed to own a driveway on the north of the building. My understanding is that they have used the driveway. Dur-

ing the time I was living there, I saw them use it. I think that the making of the claim by them was co-incident with the building of the building. They claimed it at the time of laying the cornerstone in the fall of 1893. I could not say as to whether or not there is a well-defined driveway, whether the wheel marks were well defined or not. I simply knew they have claimed the driveway and used it."

The defendant Louis Barth, among other things, testified as follows:

"Q. And have you known since you first went there and after you purchased it of the driveway into that property?

"A. There was a driveway joining the St. Cecelia building.

"Q. Whether or not that has been during that time an open driveway?

"A. Yes, it was open.

"Q. Was that a driveway into the Morgan property which you purchased?

"A. Yes, sir.

"Q. And whether it was used in connection with the Morgan property on which it was located?

"A. Yes, sir; whatever was unloaded there, wood, coal, etc., was taken over the driveway, because the woodshed was in the rear of the Morgan building. I have owned it since 1910. I knew of the property from about 1890. * * * I have known of the St. Cecelia people driving in the north side of the building to unload pianos. I have known them to unload coal from the front of the building. They do that now. I have seen them carry in a piano there once, and a harp."

Numerous witnesses of the plaintiff testified to the driveway and the nature and extent of its use. One who had been president said:

"There is a driveway, a regular driveway built there, which the St. Cecelia built at the time they built their own sidewalk, for use as a driveway. It extends down to the curb, down to the street."

Nearly a score of witnesses testified to the continu-

ous use of this driveway. There was a door upon the north side of the building through which pianos and scenery were taken upon the platform of the club house, and the testimony of a number of witnesses was to the effect that when there was a large crowd in the building this door was opened, and, steps having been built, was used as an exit into the driveway for people who were leaving the building.

In view of this entire record, and of the evidence showing the nature and character of the continued use of this strip of land by the plaintiff since the erection of its building, and the acquiescence therein of the owner of the adjoining premises, it seems to us that it should be held that the plaintiff has acquired a prescriptive right to drive over the land in question. It may be said that for over 25 years it has driven over it when occasion required, and it has continuously claimed the right to do so. The elements necessary to give rise to a prescriptive right are the same as those of title by adverse possession, with the exception that it does not have to be exclusive. It would seem that all the elements necessary to an easement by prescription are present in this case, and that the court below should have granted that relief to the plaintiff.

Under the evidence we are unable to find that the plaintiff has had such adverse possession of this property as would entitle it to absolute ownership in fee with the right to fence the same and occupy it for any and all purposes to the exclusion of the defendants; but we do think that it has an easement by prescription, in the nature of an appurtenant easement attached to the premises of the plaintiff.

In 9 R. C. L., title "Easements," in section 2, it is said:

"An easement has been defined as a liberty, privilege or advantage in land without profit, existing distinct from the ownership of the soil. It is a right which

one person has to use the land of another for a specific purpose."

In section 33 appears the following:

"To establish an easement by prescription there must be: *First,* continued and uninterrupted use or enjoyment; *second,* identity of the thing enjoyed; *third,* a claim of right adverse to the owner of the soil, known to and acquiesced in by him.   The accepted rule is that the user must be exercised by the owner of the dominant tenement, and must be open, peaceable, continuous, and as of right.   It is sometimes declared that it must also be exclusive, but the term 'exclusive use,' does not mean that no one may use the way except the claimant of the easement.   It means no more than that his right to do so does not depend on a like right in others."   *   *   *

Section 34:

"The correct rule as to continuity of user, and what shall constitute such continuity, can be stated only with reference to the nature and character of the right claimed.   An omission to use when not needed does not disprove a continuity of use, shown by using it when needed, for it is not required that a person shall use the easement every day for the prescriptive period. It simply means that he shall exercise the right more or less frequently, according to the nature of the use to to which its enjoyment may be applied."

It would seem from the evidence that the use of this strip of land by the plaintiff was so open, notorious, continuous, and discoverable, as to be notice to the defendant Louis Barth when he purchased the property adjoining.   This being so, he took his title subject to such easement to the extent that his grantor was bound thereby, and the same may be said as to the other defendants. *Murphy Chair Co.* v. *Radiator Co.,* 172 Mich. 14, 28.   Upon the subject of easements generally, see *Hoag* v. *Place,* 93 Mich. 450 (18 L. R. A. 39) ; *Williams* v. *Barber,* 104 Mich. 31; *Township of*

*Oneida* v. *Allen*, 137 Mich. 224; *Bean* v. *Bean*, 163 Mich. 379, 395; *Berkey & Gay Furniture Co.* v. *Milling Co.*, 194 Mich. 234. Upon the subject of exclusive use, see 2 Tiffany Modern Law. of Real Property, § 449. Also *First National Bank* v. *Vanden Brooks*, 204 Mich. 164, 178. In that case we said:

"It cannot be said that, because other persons than this defendant used this stairway, his use was not exclusive. In *Schmidt* v. *Brown*, 226 Ill. 590 (80 N. E. 1071, 11 L. R. A. [N. S.] 457), it was held that because other persons besides the claimant of a right of way used it, did not prevent the claimant's user from being exclusive, since exclusive use means that his right does not depend on a like right in others; the court citing Washburn on Easements, § 44, p. 164; Jones on Easements, § 272; *Bennett* v. *Biddle*, 150 Pa. 420 (24 Atl. 738); *McKenzie* v. *Elliott*, 134 Ill. 156 (24 N. E. 965)."

We think it should be held that the plaintiff has a prescriptive easement appurtenant to this property, to the use of the strip of land in question as a driveway.

In its motion to amend the bill of complaint the plaintiff's claim was to more than 6.81 feet in width upon the east end of the driveway, but as the plaintiff has not appealed we think it can claim no more in width than it was granted by the court below. The decree below will be modified so as to give this prescriptive right to the plaintiff, instead of absolute ownership by adverse possession. That decree will be modified in this particular and as thus modified affirmed. In view of the respective claims of the parties here, no costs will be awarded to either party in this court.

Decree below modified and affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.