## MUMROW v RIDDLE

1. ADVERSE POSSESSION—PROPERTY—REAL ESTATE—HOSTILE USE—ADVERSE INTENT.

   Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder; the term "hostile" as employed in the law of adverse possession does not imply ill will, nor is the claimant required to make express declarations of adverse intent during the prescriptive period.

2. EASEMENTS—PRESCRIPTIVE EASEMENTS—ADVERSE POSSESSION.

   A party acquires an easement by prescription for a driveway over a corner of his neighbor's land where the driveway is in continuous use for 20 years, the circumstances are such that the owner should have been aware of the use of his property and the present owner testifies that he was in fact aware of the use, permission to use the portion of land was never asked for nor granted, and the parties had never discussed the matter.

3. EASEMENTS—PRESCRIPTIVE EASEMENTS—ADVERSE POSSESSION—STATUTORY PERIODS—DATE OF COMMENCEMENT—STATUTES.

   The date of commencement of the statutory 15-year period of adverse use for purposes of establishing an easement by prescription is the date on which such use began where the party claiming the easement has been in continuous possession and use for longer than the statutory period; periods of ownership of the servient estate are tacked (MCLA 600.5801; MSA 27A.5801).

4. EASEMENTS—PRESCRIPTIVE EASEMENTS—ENJOYMENT—BURDEN ON SERVIENT TENEMENT—REASONABLENESS.

   Generally, one who has an easement by prescription has the

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur 2d, Adverse Possession §§ 32–38.

[2] 25 Am Jur 2d, Easements and Licenses § 56.

[3] 25 Am Jur 2d, Easements and Licenses §§ 49, 50, 53.

[4] 25 Am Jur 2d, Easements and Licenses § 84.

[5] 25 Am Jur 2d, Easements and Licenses §§ 85, 86.

[6] 25 Am Jur 2d, Easements and Licenses § 85.

privilege to do such acts as are necessary to make effective the enjoyment of the easement, unless the burden upon the servient tenement is thereby unreasonably increased, and what is reasonable is largely a function of the circumstances.

5. EASEMENTS—PRESCRIPTIVE EASEMENTS—REPAIRS OR IMPROVEMENTS —TESTS.

The test of whether a repair or improvement upon a prescriptive easement is justified is twofold: First, is the repair or improvement necessary to effective enjoyment of the easement, and second, if necessary, does it unreasonably increase the burden on the servient tenement.

6. EASEMENTS—PRESCRIPTIVE EASEMENTS—IMPROVEMENTS ON EASEMENTS—PAVING DRIVEWAYS—BURDEN ON LAND.

A party who has acquired an easement by prescription over a neighbor's land through the use of a portion of that land as a gravel driveway for over 20 years may not pave the portion of the driveway located on the easement where there is no showing that such an improvement is necessary, and where to do so would thereby increase the burden on the neighbor's land.

Appeal from Genesee, Ollie B. Bivins, Jr., J. Submitted January 13, 1976, at Lansing. (Docket No. 23538.) Decided March 9, 1976.

Complaint by Maynard H. Mumrow and Leah M. Mumrow against Temple N. Riddle and Mary A. Riddle for an order permanently enjoining defendants from trespassing on plaintiffs' land. Injunction granted. Defendants appeal. Reversed and remanded.

*Lattie, Hamilton & Anastor,* for plaintiffs.

*Crawford & Newman* (by *Richard J. Drew,* of counsel), for defendants.

Before: N. J. KAUFMAN, P. J., and M. F. CAVANAGH and T. M. BURNS, JJ.

M. F. CAVANAGH, J. Defendants appeal from an order permanently enjoining them from trespass-

ing on plaintiffs' property. Defendants claim an easement by prescription.

Defendants' gravel driveway crosses a corner of plaintiffs' lot. All of the disputed portion, it appears, lies within the unpaved right of way of a two-lane highway which passes in front of both homes. There is no suggestion that any portion of the driveway covers any part of the plaintiffs' property which is not also included in the highway right of way. The driveway was constructed by 1952 at least, when defendants moved into their house, which they had built on the property, itself purchased earlier.

At the time the driveway was constructed plaintiffs' property was owned and lived on by plaintiffs' immediate predecessors in title, the Durbins. When defendants constructed the driveway, they knew that it crossed the corner of the Durbins' property. Defendants constructed the driveway so that any portion of it which intruded on plaintiffs' legal description would also be within the highway right of way.

Defendants never asked the Durbins' permission to construct the driveway across a corner of the latter's property. The Durbins never objected, and the driveway was constructed and used continuously from 1952 on. In 1965, plaintiffs purchased the Durbins' home. Although plaintiff Maynard Mumrow testified that he was aware as early as 1966 that the driveway crossed his property, no challenge to defendants' user was raised until 1972.

In 1972 the city dug up that portion of the driveway which lies within the highway right of way in order to lav sewer pipe. In return for a sewer easement from defendants, the city agreed to pave the rectangular portion of the driveway

within the right of way. When plaintiff noticed the paving forms, he immediately protested to the city and work ceased.

In April, 1973, plaintiffs filed a complaint to abate a continuing trespass by defendants, requesting a permanent injunction against defendants. Defendants answered, as an affirmative defense, that they had acquired an easement by prescription. After a hearing, the trial court ruled that defendants had "failed to prove any theory of ownership or claim of right which would defeat plaintiffs' record title to the area" and granted the injunction. In its written opinion the court concluded that the required element of hostility did not exist. In addition the court held that the statutory period of 15 years (MCLA 600.5801; MSA 27A.5801) did not begin to run until 1965, when plaintiffs purchased the Durbins' property. On appeal defendants argue that both conclusions were wrong.

As regards the adverse character of the user, we conclude that defendants established their claim of open and visible use, adverse to plaintiffs, of the disputed area as part of defendants' driveway. The trial court erred when it concluded that defendants' claim of an easement by prescription failed for lack of the element of hostility. The evidence shows that the defendants used the strip of land in question as part of their gravel driveway, at least from the time their house was completed in 1952. Since the driveway was from the road to their residence, defendants made daily and continuous use of it. The driveway was there for all to see. Although we do not know for certain whether the Durbins knew of this use of their property, since they did not testify, the circumstances were such that the owners of the corner portion should have

been aware of this use of their property as part of defendants' driveway. See *St Cecelia Society v Universal Car & Service Co,* 213 Mich 569; 182 NW 161 (1921). Plaintiff Mumrow testified that at least by January, 1966, he was aware that the driveway crossed his property.

The nature of the use was such as to indicate that it was made under "claim of right". There was no testimony that defendants asked for or received the permission of the Durbins to build the driveway. The Durbins apparently never objected; the driveway was constructed and used continuously. Defendant Riddle testified that he never asked the permission of the Durbins to build his driveway. He testified that he believed that, since any portion of their property he might be crossing was within the highway right of way, he was legally entitled to run his driveway across it to reach the road. Nor did defendants ask for or receive permission from plaintiffs to continue using the strip of land as part of their driveway after plaintiffs purchased the property from the Durbins in 1965. Plaintiff Mumrow testified that he was aware, as early as January, 1966, that the driveway crossed his property; but he never discussed the matter with defendants.

The trial court did not discuss the nature of defendants' user during the period the Durbins owned plaintiffs' property. In its opinion the court noted plaintiff Mumrow's testimony that, although he and defendants never talked about the use of the property, he felt that he was "letting them use it" and did not "mind" until he noticed that defendants were "going to put concrete across it". The court also noted Mumrow's testimony that at no time prior to 1972 did he have the impression that defendants were claiming the property as their own. The court then concluded:

"Since plaintiffs [sic] testified that he made no objection to the use made by the defendants of the disputed area, it cannot be said that the requisite element of hostility existed."

This conclusion is not in accord with the law controlling easements by prescription. See *St Cecelia Society v Universal Car & Service Co, supra.* The term "hostile" as employed in the law of adverse possession is a term of art and does not imply ill will. Nor is the claimant required to make express declarations of adverse intent during the prescriptive period. Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder. See *Rose v Fuller,* 21 Mich App 172; 175 NW2d 344 (1970); also, 25 Am Jur 2d, Easements and Licenses, § 51, pp 460–461. On the evidence presented, defendants' use of the strip of land in question as part of their driveway was adverse to plaintiffs so as to support an easement by prescription.

In its opinion the trial court stated:

"The date of commencement of the statutory period of fifteen (15) years would be dated the year plaintiffs acquired title to the land."

The court then concluded that the statutory period had not run as of 1972. The court did not give any reason nor cite any authority for its holding that the statutory period did not commence until 1965. We find no basis in the facts for such a conclusion. Defendants' use of the property for driveway purposes was continuous from at least 1952 until 1972. In view of the record here, the date of commencement of the statutory period would be

1952 at the latest, when the cause of action accrued to plaintiffs' predecessors, the Durbins. See MCLA 600.5801; MSA 27A.5801, also, *St Cecelia Society v Universal Car & Service Co, supra.* Michigan has long had an unusual rule with regard to tacking periods of adverse user by successive owners of the dominant tenement. See *Siegel v Renkiewicz Estate,* 373 Mich 421; 129 NW2d 876 (1964). However that rule has no application where, as here, the adverse user by the owner of the dominant tenement exceeds the prescriptive period. Periods of ownership of the servient estate are, of course, tacked. MCLA 600.5801; MSA 27A.5801; also, *St Cecelia Society v Universal Car & Service Co, supra.*

Defendants adverse user continued for more than the prescriptive period. Under the evidence we hold that defendants have an easement by prescription to the use of the strip of land in question as part of their driveway. *St. Cecelia Society v Universal Car & Service Co, supra.* That however does not necessarily mean that defendants may pave with concrete that part of the driveway which is on plaintiffs' property.

As a general rule, one who has an easement by prescription has the privilege to do such acts as are necessary to make effective the enjoyment of the easement, unless the burden upon the servient tenement is thereby unreasonably increased. Restatement of Property, § 480; 3 Powell on Real Property, § 415, p 514 and § 416 pp 520 and 524. The question is largely a matter of what is reasonable under the circumstances. 112 ALR 1303, 1308. Since the scope of the dominant owner's privilege is so largely a function of the circumstances, opposite conclusions on varying sets of facts are to be expected. Powell, *supra,* at 514, n 32; *cf. Carlton v*

*Warner,* 46 Mich App 60; 207 NW2d 465 (1973). See generally 25 Am Jur 2d, Easements and Licenses, §§ 84–87.

The making of repairs and improvements necessary to the effective enjoyment of an easement by prescription is incidental to and part of the easement. Even if not done during the prescriptive period, such repairs and improvements may become necessary. The effective enjoyment of a prescriptive easement may involve not only repairs to preserve the servient tenement in the condition in which it was at the time the adverse use was being made but also improvements to it. However, repairs and improvements, but particularly the latter, will not be permitted if they unreasonably increase the burden on the servient tenement. Comment, Restatement of Property, § 480, pp 3005–3006.

Thus the test is, to an extent, twofold. The first determination is whether the repair or improvement is necessary to effective enjoyment of the easement. The second determination is whether the repair or improvement, if necessary, unreasonably increases the burden on the servient tenement. Obviously, there will be some interdependence between and balancing of the two determinations. Also, "improvements" may be expected to receive somewhat closer scrutiny than "repairs". See, *e.g.,* Restatement of Property, § 480, illustration 4, p 3007.

The paving contemplated in the instant case clearly is an improvement and not just a repair. The driveway on plaintiffs' property has existed as a gravel driveway for over 20 years. Defendants made no showing that it was necessary to pave it with concrete nor do the circumstances indicate that such an improvement is necessary. From the

record it appears that although the rest of the driveway was gradually paved with concrete, the portion in dispute remained a gravel driveway up to the time the city agreed to pave it. The gravel drive would certainly appear to be less obtrusive and less a burden on plaintiffs' property than a concrete one. Plaintiffs never objected to the gravel driveway on their property; they did object to the attempt to pave it with concrete.

We conclude that defendants have an easement by prescription for their driveway but that under the circumstances they are not permitted to pave with concrete the portion of the driveway on plaintiffs' land. See *Cheslek v Gillette,* 66 Mich App 710; 239 NW2d 721 (1976).

Reversed and remanded for disposition consistent with this opinion.

No costs, neither party having fully prevailed.