*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN DECKER and DENISE ANDERSON,

        Plaintiffs-Appellees,

v

ROBERT O'CONNELL,

        Defendant-Appellant.

UNPUBLISHED
May 12, 2026
2:16 PM

No. 373692
St. Clair Circuit Court
LC No. 22-001515-CZ

Before: BORRELLO, P.J., and M. J. KELLY and ACKERMAN, JJ.

PER CURIAM.

In this action for adverse possession, acquiescence, and a prescriptive easement, defendant appeals as of right the trial court's judgment quieting title to certain disputed areas of property and granting a prescriptive easement to plaintiffs, Kevin Decker and Denise Anderson, after a bench trial. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case involves the parties' boundary dispute regarding their adjacent properties on Harsens Island in Clay Township, Michigan. Decker's and defendant's families had each owned their respective properties for over 100 years. Decker personally acquired his property in 1980 and lived there year-round with Anderson, his wife, since 2004, while defendant personally acquired his property in 1994 as a summer cottage.

The order of judgment in this case includes two survey diagrams that depict the property in dispute in this case. We include them below for ease of reference in this opinion. We will refer to the first survey as "Survey A" and the second as "Survey B."



GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

Copyright 2021 BMJ Engineers & Surveyors Inc. All rights reserved.

MORRIS SAX DRIVE

LOT 135

LOT 18

LOT 17

LOT 463

LOT 6

LOT 7

POLE BARN

POLE BARN

GRAVEL

GRAVEL

#74-14-856-0014-000

#74-14-847-0452-001

S55°55'00"E 45.00'(R) 44.91'(M)

BD 1.7' NORTH OF PL

FND RER00
P.O.B.
R1 #24606
0.5' N OF COR

7.53'

FENCE END 0.1'
EAST OF PL

BD 13.1' SOUTH OF PL

BD 7.9' E OF PL

S30°04'55"W 85.38'

N34°33'25"E 95.02'

BD 4.9' W OF PL

N34°33'25"E 105.8'1"(R&M)

PAVING STONES 1.3'
IN DIAMETER
(TYP.)

DECK

HAB

HAB

AREA "X"

FND RER00

FENCE END 0.5'
EAST & 0.5'
SOUTH OF PL

FND NOTCH IN SEAWALL
EDGE 0.84' S'LY OF COR

SPECIAL SKETCH INVOLVING PARCELS #74-14-856-0014-000 & -847-0452-001,
BEING IN THE "JOE BEDORE SYNDICATE SUBDIVISION" AND THE
"SOUTH CHANNEL SECTION OF THE 1899 SURVEY OF THE ST. CLAIR FLATS"
HARSENS ISLAND, CLAY TWP., ST. CLAIR COUNTY, MICHIGAN
FOR: KEVIN DECKER

BMJ
ENGINEERS & SURVEYORS INC
CIVIL ENGINEERS & LAND SURVEYORS
619 HURON AVE, PORT HURON, MI 48060
TEL: 810-984-5596   FAX: 810-984-4760
Web Page: www.bmjinc.com   Email: mail@bmjinc.com

SCALE: 1"=10'
DATE: 7/28/2021
DRAWN: KCM
CHKD:
SURVEYED: ME
JOB NO: 20294W
SHEET 1 OF 1

-2-



Copyright 2021, BMJ Engineers & Surveyors Inc. All rights reserved.

#74-14-856-0014-000

MORRIS SAX DRIVE

LOT 135

P.O.B. EASEMENT

S55°55'00"E
45.00'(R)
44.91'(M)

APPX COMPOST
BIN LOCATION

POLE BARN

BD 1.7'
NORTH OF PL.

9.6'

FND REROD

S38°18'02"W
4.02'

PROPOSED EASEMENT

AREA "B"
0.5' N OF COR.

FND #24600

P.O.B. "B"

27.83'

N51°41'58"W    29.41'

S78°19'36"W

2.57'

FENCE END 0.7'
EAST OF PL.

PAVING STONES 1.3'
IN DIAMETER (TYP.)

GRAVEL

GRAVEL

BD 13.1' SOUTH OF PL

POLE BARN

LOT 18

BD 7.9' E OF PL

#74-14-847-0452-001

DECK

BD 4.8'
W OF PL

#166

N34°33'25"E    105.81'(R&M)

BOARD

LOT 17

FND REROD

LOT 463

LOT 7

FENCE END 0.5'
EAST & 0.5'
SOUTH OF PL

FND NOTCH IN SEAWALL
EDGE 0.84' SLY OF COR

LOT 6

## GRAPHIC SCALE

( IN FEET )
1 inch = 10 ft.

0    5    10    20

SPECIAL SKETCH INVOLVING PARCELS #74-14-856-0014-000 & -847-0452-001,
BEING IN THE "JOE BEDORE SYNDICATE SUBDIVISION" AND THE
"SOUTH CHANNEL SECTION OF THE 1899 SURVEY OF THE ST. CLAIR FLATS"
HARSENS ISLAND, CLAY TWP., ST. CLAIR COUNTY, MICHIGAN
FOR: KEVIN DECKER

**BMJ** ENGINEERS & SURVEYORS, INC.
CIVIL ENGINEERS & LAND SURVEYORS
819 HURON AVE. PORT HURON, MI 48060
TEL: 810-984-5596  FAX: 810-984-4760
Web Page: www.bmjinc.com   Email: mail@bmjinc.com

SHEET 2 OF 3
JOB NO. 24044
DRAWN: RJA
CKD: RJA
SURVEYED: RE
DATE: 7/07/2021
SCALE: 1"=10'

-3-

Plaintiffs own Lot 135, containing the pole barn depicted in the northeast corner, and Lot 17, containing the house and deck partially depicted in the southwest portion of the survey. Defendant owns Lot 18 and the pole barn shown on that lot. Three areas are in dispute. First, is the long pie-shaped piece of property that is shaded on Survey A, running approximately north-south. Next, there is a triangular area in the northern corner of Lot 18 that is shaded on Survey B. Finally, there is another pie-shaped area running approximately east-west that is also shaded on Survey B.

With respect to the approximately north-south boundary line, Decker testified that he and his grandfather placed a wooden board in the ground in the late 1960s that was treated as the boundary line between the properties. At some point after 2004, Anderson planted flowers along the same line as the board to replace a section that had deteriorated. Decker testified that he maintained the property on his side of the delineated boundary line by fertilizing, weeding, and mowing the grass, and defendant never maintained or used that area. However, defendant testified that he never considered the board to be the actual boundary line.

Decker hired a contractor to build an outbuilding on Decker's property in 2001. Decker also installed stepping stones for a path to the outbuilding, planted a flower bed in front of the outbuilding, and placed compost bins next to the flower bed. Plaintiffs used this path multiple times each day to go between the house and outbuilding. A drawing which the contractor prepared for a permit application indicated the outbuilding was 3 feet from the boundary line that now separated the parties' outbuildings.[1] In building the outbuilding and maintaining his property, Decker thought he was adhering to the "deeded lines." Defendant testified that he "really didn't care" that the stepping-stones "were cutting across the corner" of his property for plaintiffs to "go in and out of their shed."

Defendant built a seawall on his property in 2006.[2] As part of the permit application, defendant prepared a diagram that showed the deeded boundary line running straight from the seawall to plaintiffs' outbuilding rather than following the line of the board that Decker considered to be the boundary line. Defendant determined the placement of the boundary line running approximately east-west by measuring from the seawall. In 2014, defendant built an outbuilding next to plaintiffs' outbuilding. After talking to Decker, defendant "moved the building over toward [his] driveway further so that [Decker] would be able to look out his building[] . . . and look all the way to the channel." According to plaintiffs, after flooding in 2019, defendant constructed a dike which lined up with the board and continued that line along the length of the property. Defendant testified that he did not intend for the dike to be the boundary line.

In addition to maintaining the flower bed, Decker fertilized and mowed the grass between the parties' outbuildings, extending to approximately 10 feet from plaintiffs' outbuilding. Decker testified that he believed the southern boundary line was 6 to 7 feet from his outbuilding. The two outbuildings were about 17 feet apart. Anderson used the area within 4 feet of plaintiffs'

---

[1] Defendant's outbuilding was built after Decker's outbuilding.

[2] Defendant said he deposited fill from an earlier seawall project on the northwest part of his property, within the area which the parties dispute.

outbuilding to access the flower bed and compost bins. Defendant also mowed the grass between the outbuildings, but he did not mow on the other side of the board between his outbuilding and plaintiffs' house. Decker "assumed" the board "was the boundary line and . . . mowed to it." Defendant parked his van between the outbuildings for about a year at some point before plaintiffs added the flower bed. Defendant's dogs also ran around the disputed area.

Before 2022, the parties had "off and on" conversations about the location of the boundary line. However, in 2022, defendant had his property surveyed because he wanted to install a fence. He then installed a fence "approximately 6 inches inside" the surveyed property line and spread gravel between the two outbuildings up to approximately three feet from plaintiffs' outbuilding. The gravel covered some of plaintiffs' stepping stones. Defendant also started storing a boat on the newly installed gravel. Decker testified that the fence and gravel went onto what he had considered his property according to his historic understanding of the boundary line. Defendant testified, however, that the board was angled and closer to his outbuilding than the actual boundary line. According to defendant, Decker offered to purchase the disputed area before defendant put up the fence.

Plaintiffs filed a complaint to quiet title, requesting the trial court award them title of the disputed area by adverse possession and acquiescence and award them a prescriptive easement. In their amended complaint, plaintiffs specifically requested "a prescriptive easement to continue use of the disputed property to access their outbuilding."

A bench trial was held. In a written opinion and order, the trial court found, regarding the side-yard area between plaintiffs' house and defendant's outbuilding, that plaintiffs maintained the area without intending to claim property beyond the deeded line. Accordingly, the trial court ruled that plaintiffs did not establish title by adverse possession to the side-yard area but did establish title by acquiescence to the boundary line set by the board because the "evidence overwhelmingly shows the parties and their predecessors in interest have treated this line as the property line well beyond the statutory period of 15 years despite what their understandings may have been about the location of the deeded line." This area is depicted as the shaded area in Survey A.

Regarding the pie-shaped area between the two outbuildings, depicted in Survey B, the trial court ruled that plaintiffs did not establish adverse possession since defendant also used the area by mowing the grass and parking his van in that location. However, the trial court concluded that plaintiffs established a prescriptive easement over defendant's portion of the outbuilding area for purposes of maintaining their outbuilding and flower bed, as well as accessing their compost bins. Finally, the trial court ruled plaintiffs adversely possessed the stepping-stones area. The trial court found plaintiffs "considered and used the stones and the area immediate [sic] next to the stones . . . as their own property, and it was plain to [d]efendant his rights were being invaded." The trial court issued its final judgment quieting title to plaintiffs and ordering defendant to remove or relocate the fence. Defendant now appeals.

## II. STANDARD OF REVIEW

"Actions to quiet title are equitable in nature, and equitable rulings are reviewed de novo." *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). This Court reviews a trial court's findings of fact after a bench trial for clear error, but the trial court's conclusions of

law are reviewed de novo. *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). "The trial court's findings are given great deference because it is in a better position to examine the facts." *Chelsea Investment Group*, 288 Mich App at 251.

## III. ACQUIESCENCE

Defendant argues the trial court erred by ruling the parties acquiesced to the boundary line as established by the board in the side-yard area.

"Under Michigan law, parties may acquiesce to a new property boundary line," and "[a]cquiescence is established when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line." *Houston*, 335 Mich App at 567 (quotation marks and citation omitted). There are three theories of acquiescence: "(1) acquiescence for the statutory period, (2) acquiescence following a dispute and agreement, and (3) acquiescence arising from intention to deed to a marked boundary." *Walters*, 239 Mich App at 457. Only the first theory is at issue in the present case. "The statutory period for acquiring property by acquiescence is 15 years." *Houston*, 335 Mich App at 567-568, citing MCL 600.5801(4).

"A claim of acquiescence for the statutory period requires a showing that the property owners treated a boundary line or marker as the property line for 15 years." *Id*. at 568. "Our Supreme Court has repeatedly held that a boundary line long acquiesced in and treated as the true line should not be disturbed on the basis of new surveys." *Id*. Under this theory of acquiescence, the proponent must show "that the parties acquiesced in the line and treated the line as the boundary for the statutory period, irrespective of whether there was a bona fide controversy regarding the boundary." *Walters*, 239 Mich App at 456 (quotation marks and citation omitted). "A claim of acquiescence does not require that the possession be hostile or without permission." *Id*. (quotation marks and citation omitted). A claim of acquiescence can only arise "when there has been some agreement, whether tacit or overt, as to the location of the boundary." *Houston*, 335 Mich App at 568 (quotation marks and citation omitted).

Based on our review of the record and the evidence described above, we are not left with a definite and firm conviction that the trial court made a mistake by finding by a preponderance of the evidence that the parties had treated the board as the boundary line for the statutory period. Defendant's arguments on appeal merely amount to expressions of disagreement with how the trial court assessed the weight and credibility of the testimony and evidence. However, it is not our task to usurp the trial court's position as finder of fact, and we defer to the trial court's assessments due to its superior opportunity to observe the witnesses testifying. *Chelsea Inv Group*, 288 Mich App at 251; see also *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002) ("[W]e defer to the trial court's superior position to observe and evaluate witness credibility.").

We further note that defendant apparently never took any action consistent with his alleged understanding that the board was not the actual boundary line, that defendant did not complain when Anderson planted flowers along the same alleged boundary line as the board, and the parties

only mowed and maintained the grassy area on their respective sides of the board. Such evidence demonstrates, at a minimum, a tacit acquiescence to the location of the boundary consistent with the placement of the board that had been in that location since the 1960s. *Houston*, 335 Mich App at 568 (quotation marks and citation omitted). Defendant has not shown that the trial court's finding was clearly erroneous.

## IV. PRESCRIPTIVE EASEMENT

Defendant argues the trial court erroneously granted a prescriptive easement in the outbuilding area. First, defendant asserts that the trial court exceeded the scope of the relief requested by granting a prescriptive easement that included allowing plaintiffs to access their flower bed and compost bins. Second, defendant also argues that even if those issues were properly before the trial court, plaintiffs nonetheless failed to establish all the elements necessary for a prescriptive easement because their use of the area was not "hostile."

"Just as ownership of land may be acquired through adverse possession, so too may an easement be acquired through prescription." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). The necessary elements to establish an easement by prescription are the same as those for title by adverse possession except that the use does not have to be "exclusive" to demonstrate a prescriptive easement. *Id*. Accordingly, a party claiming a prescriptive easement must establish, by clear and cogent proof, use that was actual, continuous, open, notorious, hostile, and uninterrupted for the statutory period of 15 years. *Id*. at 202-203, 211-212. "The possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally, and with the purpose to assert a claim of title adversely to his, so that if the true owner remains in ignorance it is his own fault." *Id*. at 211 (quotation marks and citation omitted).

Turning to defendant's first argument about the scope of the easement, a "prescriptive easement is generally limited in scope by the manner in which it was acquired and the previous enjoyment." *Heydon v MediaOne*, 275 Mich App 267, 271; 739 NW2d 373 (2007). "One who holds a prescriptive easement is allowed to do such acts as are necessary to make effective the enjoyment of the easement unless the burden on the servient estate is unreasonably increased; the scope of the privilege is determined largely by what is reasonable under the circumstances." *Id*.

Here, defendant argues that plaintiffs' amended complaint only requested a prescriptive easement for purposes of accessing plaintiffs' outbuilding and did not seek a prescriptive easement for maintaining the flower bed or accessing the compost bins. Furthermore, defendant argues that the evidence that plaintiffs used the land on the side of their outbuilding to maintain the flower bed and access the compost bins was introduced for purposes of plaintiffs' unsuccessful adverse possession claim. Defendant contends that plaintiffs failed to move to amend their pleadings under MCR 2.118(C)(1) and that these issues were not tried by express or implied consent of the parties.

MCR 2.118(C)(1) provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings.

In that case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment.

Here, plaintiffs' first amended complaint generally alleged that plaintiffs had used and maintained all the disputed area, and the amended complaint sought relief based on theories of adverse possession, acquiescence, and prescriptive easement. Although defendant is correct that the first amended complaint states that plaintiffs sought a prescriptive easement "to continue use of the disputed property to access their outbuilding," the prescriptive easement count also expressly includes the other paragraphs of the amended complaint and references plaintiffs' use and maintenance of the disputed property generally. We find these allegations sufficiently broad to incorporate the relief granted by the trial court in the form of a prescriptive easement, especially considering that the prescriptive easement theory was expressly pled as an alternative to the adverse possession and acquiescence counts. As this Court has previously explained, a " 'final judgment may grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded that relief in his or her pleadings.' " *City of Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 491; 608 NW2d 531 (2000), quoting MCR 2.601(A). Nonetheless, "[w]hile a court may afford relief not specifically prayed, it may not grant relief not germane to the issues presented by the pleadings." *City of Jackson*, 239 Mich App at 492 (quotation marks and citation omitted).

Here, evidence was presented that plaintiffs used the area between their outbuilding and defendant's outbuilding for purposes of accessing plaintiffs' outbuilding, maintaining the flower bed, and accessing the compost bins. The trial court found that evidence established all the elements of a prescriptive easement "for purposes of maintaining their building, flower garden and traversing to and from their compost bin." However, the trial court also found that the exclusivity element of an adverse possession claim—which is the only distinction between claims for adverse possession and easement by prescription—was not satisfied because the evidence reflected that defendant also maintained much of the same area between the two outbuildings. On this record, the trial court's award of a prescriptive easement was clearly germane to the issues presented by the pleadings, and defendant was not somehow deprived of notice or the opportunity to defendant against plaintiffs' claims. *Id*.

Further support for this conclusion may be found in *St Cecelia Soc v Universal Car & Serv Co*, 213 Mich 569, 576; 182 NW 161 (1921). In that case, our Supreme Court held that the trial court should have granted a prescriptive easement to the plaintiff with respect to a driveway, even though the plaintiff's original claim was one of record title and possession to the disputed strip of land rather than a claim of adverse possession or easement by prescription. *Id*. at 571, 572. Although the plaintiff moved at the close of proofs to amend the complaint to add such alternate theories, the trial court denied the motion while also finding that the plaintiff had acquired title to the disputed strip of land by adverse possession. *Id*. at 571. On appeal in our Supreme Court, the defendant argued that the trial court was precluded from granting relief based on a claim that was not raised in the complaint. *Id*. at 573. Noting that there had been testimony regarding the nature in which the disputed strip was used, admitted without objection, and that the case was heard on the merits, the Supreme Court concluded that "under the circumstances here disclosed the bill should be treated as amended in this court to conform with the testimony," which "would seem to be equitable under all the circumstances of the case . . . ." *Id*. at 573-574. The Court cited the rule that "Amendments as to matters germane to the case can be allowed at any time in chancery suits

-8-

to conform with the proofs, protect the substantial, equitable rights of the parties, and secure the ends of justice—even in the appellate court." *Id*. at 573 (quotation marks and citation omitted).

In the present case, defendant has not furnished this Court with any reason for reaching a contrary conclusion. Thus, defendant has not demonstrated any error on this ground.

Defendant next argues that plaintiffs did not establish a prescriptive easement because their use of the area was not "hostile." Defendant maintains that the record shows that he did not view plaintiffs' use of the area as hostile to defendant's interests, that Decker was simply being neighborly by mowing defendant's grass, and that defendant permitted plaintiffs' to occasionally walk across his property to maintain the flower bed and access the compost bins.

As previously stated, a party's use of the property does not need to be exclusive to establish a prescriptive easement. *Marlette Auto Wash*, 501 Mich at 202. However, use of another's property with permission cannot ripen into a prescriptive easement. *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000). This Court has stated that a "use is 'adverse' when it would entitle the landowner to a cause of action against the trespasser . . . ." *Goodall v Whitefish Hunting Club*, 208 Mich App 642, 646; 528 NW2d 221 (1995). Furthermore:

> The term "hostile" as employed in the law of adverse possession is a term of art and does not imply ill will. Nor is the claimant required to make express declarations of adverse intent during the prescriptive period. Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder. [*Id*. (citations and some quotation marks omitted).]

Hence, "[u]se of another's property qualifies as adverse when made under a claim of right when no right exists." *Plymouth Canton Community Crier*, 242 Mich App at 681.

Here, the evidence showed that plaintiffs simply used the area near the outbuilding, openly and continuously, to access the outbuilding and maintain the property. Defendant does not claim that plaintiffs requested permission to encroach on defendant's property for these purposes or that he ever gave such permission to plaintiffs. We also have not found any evidence in the record to support either scenario. Defendant has not demonstrated that the trial court clearly erred by finding that the use was "hostile" for purposes of a prescriptive easement. *Chelsea Investment Group*, 288 Mich App at 250.

Accordingly, defendant's arguments on appeal have not shown that the trial court erred in ruling that a prescriptive easement had been established. *Id*.

## V. ADVERSE POSSESSION

Finally, defendant argues that the trial court erroneously ruled plaintiffs established title to the stepping-stones area by adverse possession.

"A party claiming adverse possession must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant

statutory period[ of 15 years]." *Marlette Auto Wash*, 501 Mich at 202. A claimant's use of the property must be hostile, meaning a use "which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Houston*, 335 Mich App at 559 (quotation marks and citations omitted). "Where a landowner possesses the land of an adjacent owner with the intent to hold to the true [boundary] line, the possession is not hostile and cannot establish adverse possession." *Gorte v Dep't of Transp*, 202 Mich App 161, 170; 507 NW2d 797 (1993). "Simply being mistaken with regard to the true boundary line, however, does not defeat a claim of adverse possession." *Id*.

Here, the trial court ruled plaintiffs adversely possessed defendants' property by continuously using the stepping stones as a path from their house to their outbuilding. The court found that "[w]hile Plaintiffs may not have been totally aware of the location of the deeded property lines, the evidence is abundantly clear they considered and used the stones and the area immediate next to the stones with their wagon as their own property, and it was plain to Defendant his rights were being invaded." The trial court also found that defendant did not take any steps to protect his property interest around the stepping stones, despite being aware of plaintiffs' use of the area, until 2022. On this record, we do not find the trial court's findings clearly erroneous. *Chelsea Investment Group*, 288 Mich App at 250.

Nonetheless, defendant argues that plaintiffs lacked the necessary intent to claim title for adverse possession because plaintiffs admitted that they believed they were adhering to the true boundary line. However, the fact that plaintiffs were mistaken regarding the true boundary line does not undermine an adverse possession claim. *Gorte*, 202 Mich App at 170 (citation omitted). The evidence supports a conclusion that plaintiffs' use of the stepping-stone area was "hostile" because it was inconsistent with defendant's rights, without permission asked or given, such that defendant could have brought an action against plaintiffs. *Houston*, 335 Mich App at 559. We therefore reject defendant's argument in this regard.

Next, defendant argues that plaintiffs' use of the stepping-stones area was not exclusive because defendant testified that he mowed over three of the stepping-stones each time he mowed the grass on his property. However, "occasional trespasses" do not demonstrate a claimant failed to exclusively use disputed property. *Waisanen v Superior Twp*, 305 Mich App 719, 732; 854 NW2d 213 (2014) (citation omitted), superseded by statute on other grounds as stated in *Ennis-Decker v Bailey*, unpublished per curiam opinion of the Court of Appeals, issued June 22, 2023 (Docket No. 361641), p 5 n 2. In *Waisanen*, 305 Mich App at 732, this Court held the plaintiff adversely possessed a public right-of-way, even though members of the public occasionally used the right-of-way to access a beach and state park. Similarly, in the present case, defendant's occasional mowing over the stepping-stones does not automatically undermine plaintiffs' claim of exclusivity. Plaintiffs used the stepping-stones daily to access their outbuilding and repeatedly maintained the stepping-stones. Defendant has not shown that the trial court erred by ruling plaintiffs exclusively used the stepping-stones area. *Chelsea Investment Group*, 288 Mich App at 250.

Finally, defendant argues that Decker's alleged offer to purchase the stepping-stones area prevents plaintiffs from claiming adverse possession. Defendant claimed that after he surveyed his property in 2022 and told Decker he was going to build a fence, Decker offered to buy the disputed property which is the subject of this matter. There was no evidence Decker previously

offered to buy the stepping-stones area. Moreover, since installing the stepping-stones in 2001, plaintiffs already openly and exclusively used that area for the statutory period of 15 years before the purchase offer. Our Supreme Court has held that a land possessor's act of securing a deed from a competing claimant, if the purpose is to quiet title or prevent litigation, is not a recognition of superior title in the competing claimant. *Smith v Feneley*, 240 Mich 439, 442; 215 NW 353 (1927). The record in the present case supports a conclusion that plaintiffs merely sought to quiet title or prevent litigation by offering to purchase the disputed property. Defendant has not provided any evidence from which we could reach a contrary conclusion. Defendant has not shown that the trial court erred by ruling that plaintiffs established the necessary elements of adverse possession over the stepping-stones area. *Chelsea Investment Group*, 288 Mich App at 250.

Affirmed. Plaintiffs having prevailed are entitled to tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Matthew S. Ackerman